UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL FRANK TERRELL,                                Case No. 12-11781

        Plaintiff,                              Bernard A. Friedman
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                  United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On April 20, 2012, plaintiff Paul Frank Terrell filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Bernard A. Friedman referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits and supplemental security income. (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment. (Dkt. 8, 11).

1

## B.      Administrative Proceedings

Plaintiff filed an application for a period of disability and disability insurance benefits on May 2, 2010, alleging that he became disabled beginning January 1, 2009.  (Dkt. 5-5, Pg ID 242-43).  Plaintiff also filed a Title XVI application for supplemental security income on May 11, 2009, again alleging disability beginning January 1, 2009.  (Dkt. 5-5, Pg ID 249-54).  The claims were initially disapproved by the Commissioner on August 10, 2010.  (Dkt. 5-3, Pg ID 117-118).  Plaintiff requested a hearing and on June 15, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") John Murdock, who considered the case de novo.  (Dkt. 5-2, Pg ID 54-94).  In a decision dated September 19, 2011, the ALJ found that plaintiff was not disabled and that he could perform other work that exists in significant numbers in the national economy.  (Dkt. 5-2, Pg ID 38-49).  Plaintiff requested a review of this decision on September 30, 2011.  (Dkt. 5-2, Pg ID 35-36).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1]

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

the Appeals Council, on March 22, 2012, denied plaintiff's request for review.
(Dkt. 5-2, Pg ID 18-22); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th
Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for
summary judgment be **GRANTED**, and that the findings of the Commissioner be
**AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1963 and was 45 years of age on the alleged disability
onset date and 48 years old at the time of the administrative hearing.  (Dkt. 5-2, Pg
ID 48).  Plaintiff's past relevant work included work as an independent truck
driver, care giver, construction laborer, assembly line worker, facility maintenance
worker, production supervisor, and in salvage.  (Dkt. 5-2, Pg ID 48; Dkt. 5-6, Pg
ID 283-90).  The ALJ applied the five-step disability analysis to plaintiff's claim
and found at step one that plaintiff had not engaged in substantial gainful activity
since the alleged onset date.  (Dkt. 5-2, Pg ID 43).  At step two, the ALJ found that
plaintiff's Lyme disease, bilateral carpal tunnel syndrome, degenerative disc
disease with L5 nerve root irritation, COPD, and multiple areas of joint pain were
"severe" within the meaning of the second sequential step, but that plaintiff's

medically determinable mental impairment of adjustment disorder was nonsevere. (Dkt. 5-2, Pg ID 43-44).  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or equal the severity of one of the listings in the regulations.  (Dkt. 5-2, Pg ID 44).

The ALJ concluded that plaintiff had the residual functional capacity to perform light work, except he can never climb using ladders, ropes or scaffolds, can only occasionally crouch or crawl, and cannot work in environments with fumes, odors or gases.  (Dkt. 5-2, Pg ID 44-47).  At step four, the ALJ found that plaintiff could not perform his past relevant work.  (Dkt. 5-2, Pg ID 47-48).  At step five, the ALJ denied plaintiff benefits because he could perform a significant number of jobs available in the national economy.  (Dkt. 5-2, Pg ID 48-49).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred by failing to properly evaluate or consider the medical opinions of his treating physicians, Drs. Mohamed Mansour, Rama Rao and Nael M. Tarakji.  Plaintiff states that the Social Security regulations require that the findings of treating physicians regarding the severity of an impairment be accorded controlling weight if they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  And, even if the ALJ does not find that a treating physician's opinion is controlling, he

must consider the various factors listed in the regulations and provide good reasons for discrediting the opinion of the treating physician.

Plaintiff asserts that Dr. Rao reviewed plaintiff's lumbar and cervical MRIs on May 20, 2011, and assessed plaintiff with persistent severe pain; cervical neck pain with radicular pain; cervical degenerative disc disease; cervical spondylosis; cervical herniated disc; cervical foraminal narrowing; low back pain with radicular pain; lumbar degenerative disc disease; lumbar spondylosis; and bilateral sacrolitis/L5 pain.   (Tr. 556-58).  Dr. Rao proceeded to give plaintiff lumbar injections.

Plaintiff contends that Dr. Tarakji reported on January 14, 2011 that plaintiff suffers from diffuse neuropathy, sensory, mild; bilateral carpal tunnel syndrome; right cubital tunnel syndrome; degenerative cervical and lumbar spine disease; and a history of Lyme disease, rule out neuro manifestation.  (Tr. 392-93).  The January 14, 2011 Electromyographic (EMG) study confirmed evidence of: diffuse neuropathy, mainly sensory, involving both upper and lower extremities and mild in nature; superimposed bilateral carpal tunnel syndrome, sensory and borderline motor, mild to moderate in nature; right ulnar mononeuropathy at the elbow, cubital tunnel syndrome; and L5 root irritation, probably related to degenerative lumbar spine disease, but no evidence of cervical radiculopathy or brachial plexopathy of both upper extremities.  (Tr. 394-95).  On February 11, 2011, Dr.

5

Tarakji reported that plaintiff continued to have numbness and tingling involving the legs and feet with no weakness. (Tr. 595).

And, plaintiff asserts that a March 29, 2011 MRI of his cervical spine found multilevel spondylotic changes, multilevel mild ventral impression on the thecal sac, and multilevel bilateral foraminal narrowing which is moderate to severe at C6-C7.  (Tr. 601).

Plaintiff further argues that once the ALJ determined plaintiff could not return to his past work, the burden of proof shifted to the Commissioner to prove that plaintiff was capable, considering his age, education, and past work experience, of engaging in other work.  20 C.F.R. § 404.1520(b)-(f).  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has a vocational qualification to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  If the Commissioner seeks to rely on vocational expert testimony to carry that burden, "the testimony must be given in response to a hypothetical question that accurately describes the Plaintiff in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Plaintiff argues that the ALJ failed to properly evaluate all of his

6

impairments in the hypothetical question posed to the vocational expert and thus the expert's testimony does not constitute substantial evidence supporting the ALJ's decision.  Plaintiff contends that the medical evidence shows a herniated cervical disc with radiating pain, bilateral carpal tunnel syndrome with pain and numbness, and L5 nerve root involvement, and that the ALJ's hypothetical question to the vocational expert failed to include all of plaintiff's impairments. Plaintiff therefore requests that this Court reverse the decision of the Commissioner and award him benefits, or, in the alternative, remand this case back for further proceedings regarding the issues set forth in plaintiff's brief.

### C.     Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ properly weighed the medical opinion evidence and did not err in failing to give more weight to the treatment notes of Drs. Rao and Tarakji.  The Commissioner further avers that although plaintiff mentions the opinion of Dr. Mansour in the heading of his argument, plaintiff completely fails to discuss Dr. Mansour within the course of his argument, neither mentioning Dr. Mansour by name nor referring to any of Dr. Mansour's treatment notes within the argument section.  Thus, the Commissioner concludes, plaintiff's argument with respect to Dr. Mansour's opinion should be deemed waived.  *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. Appx. 464, 466 (6th Cir. 2003) ("[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.").

According to the Commissioner, plaintiff's argument with respect to Drs.

Rao and Tarakji is nothing more than a disagreement with how the ALJ decided to

weigh differing medical evidence and opinions, "which is clearly not a basis for

. . . setting aside the ALJ's factual findings." *Mullins v. Sec'y of Health & Human

Servs.*, 836 F.2d 980, 984 (6th Cir. 1987). The Commissioner argues that the ALJ

complied with the law by providing "good reasons" for discounting the doctors'

assessments. To the extent that Dr. Tarakji opined that plaintiff was disabled or

unable to work, the Commissioner contends that substantial evidence supports the

ALJ's determination that such an opinion was entitled to little weight.

Specifically, Dr. Tarakji wrote that plaintiff had "significant degenerative spine

disease in addition to the carpal tunnel syndrome, which caused significant

problems causing disability doing his construction work." (Tr. 603). However, the

decision of whether a person can work or a person is disabled requires application

of law to fact, and accordingly, is an issue "reserved to the Commissioner." *See*

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The

determination of disability is ultimately the prerogative of the Commissioner, not

the treating physician."); *see also* 20 C.F.R. § 404.1527(e)(1) ("A statement by a

medical source that you are 'disabled' or 'unable to work' does not mean that we

will find that you are disabled."); Social Security Ruling (SSR) 96-5p, 1996 WL

8

374183, at *2 (1996) ("Whether an individual is 'disabled' under the Act. The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner.").  In any event, the Commissioner argues, the ALJ's opinion was actually consistent with Dr. Tarakji's to the extent that both determined that plaintiff would be unable to perform his past work.  (Tr. 29, 603). According to the Commissioner, the ALJ further found that there were a significant number of jobs that plaintiff could perform, such as hand packer, bench assembler, or office machine operator, whereas Dr. Tarakji simply did not make a determination regarding other job opportunities.  (Tr. 29-30).

While plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Dr. Rao and Dr. Tarakji, the Commissioner argues that it is important to note that neither doctor opined that plaintiff had any functional limitations. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("The physicians who treated Ealy for these things never recommended any ongoing significant restrictions."). As such, the Commissioner contends that the treatment and examination notes of Dr. Rao and Dr. Tarakji do not constitute "medical opinions" within the meaning of 20 C.F.R. § 404.1527(a)(2).  *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009) ("Dr. McCord's responses . . . address the general relationship between Allen's spinal condition and the symptoms/limitations it may cause, rather than addressing the specific extent of Allen's limitations" and

"[these] responses appear to be outside the scope of 'medical opinions' as defined in 20 C.F.R. § 404.1527(a)(2)."). According to the Commissioner, plaintiff's focus on Dr. Rao and Dr. Tarakji is misplaced because neither doctor opined on plaintiff's ability to do specific work-related activities. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2006) ("Moreover, exclusive reliance on Dr. Dumas's opinion is misplaced because he did not submit an RFC assessment of Bowen."). The Commissioner concludes that because neither doctor made any medical judgments regarding what plaintiff could or could not do, the ALJ had no obligation to explain how he weighed their treatment notes. *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("Since Dr. Naum made no medical judgments, the ALJ had no duty to give such observations [about claimant's gait and ambulation] controlling weight or provide good reasons for not doing so.").

The Commissioner further argues that the ALJ reasonably determined that plaintiff could perform light work with postural and environmental limitations. (Tr. 26). The ALJ noted that while plaintiff had some limitations caused by pain in his back and elsewhere, the record as a whole showed only mild impairments at best without any neurological deficits. *See Crouch v. Sec'y of Health & Human Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) ("We find that the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion[.]"). For example, in May 2010, Dr. Mansour noted that plaintiff had

10

full range of motion and a normal physical examination.  (Tr. 325).  And in June 2010, Dr. Mansour refused to complete a disability form or write a disability letter for plaintiff.  (Tr. 385, 419).  A January 2011 exam by Dr. Tarakji showed that plaintiff has mostly normal tone, bulk and muscle strength of both upper and lower extremities, no atrophy, and a normal gait.  (Tr. 392).  And in July 2011, Dr. Rao noted that plaintiff had "good motor strength, normal sensory [perception]" and no muscle spasms.  (Tr. 555).

Moreover, the Commissioner argues, the ALJ properly considered plaintiff's abilities to engage in a vast array of daily activities.  *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.").  For example, plaintiff reported that he was able to make coffee, check email, do household chores, go to classes at a community college, watch TV, take care of his pets, manage his personal care and grooming, cook meals daily, and do other household chores such as mowing the lawn, cleaning, and laundry.  (Tr. 274-275).  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that [plaintiff's] subjective complaints were not credible in light of her ability to perform other tasks.").  Plaintiff also stated that he was able to walk and use public transit to get around, that he left the house two to three times daily and shopped monthly for groceries, and could count change, pay bills

11

and, use a checkbook.  (Tr. 276).  The Commissioner further states that plaintiff reported visiting with friends three or more times per week, mostly playing board games or cards.  (Tr. 277).  The Commissioner states that indeed, in November 2008, plaintiff was able to change a car tire, and in January 2011, plaintiff even reported that he exercised by walking 12-14 miles per week.  (Tr. 318, 410).  The Commissioner contends that "[d]iscretion is vested in the ALJ to weigh all the evidence," and the ALJ did not abuse that discretion in this instance.  *Collins v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 663, 668 (6th Cir. 2009).  Therefore, the Commissioner concludes that this Court should find that the ALJ did not commit reversible error in how he weighed the medical evidence.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

The Commissioner also argues that plaintiff's argument attacking the adequacy of the hypothetical question is simply a reformulation of his arguments attacking the ALJ's weighing of the medical evidence and his determination of plaintiff's residual functional capacity.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  According to the Commissioner, the ALJ properly relied upon the hypothetical question to the vocational expert which reasonably excluded limitations that were not credibly supported by the evidence.

12

(Tr. 66-68).  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").  The vocational expert's testimony in response to a hypothetical question accurately reflecting plaintiff's impairments provides substantial evidence supporting the Commissioner's decision.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").  The Commissioner concludes that the ALJ's decision, relying on the VE's testimony to find that plaintiff was not disabled, should be affirmed.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted);

14

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial

17

gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.    Analysis and Conclusions

### 1.    The ALJ properly evaluated the treating source opinions

Plaintiff broadly claims that the ALJ erred by failing to properly evaluate or consider the medical opinions of Drs. Mansour, Rao and Tarakji, his treating physicians. Plaintiff, however, fails to develop this argument, but instead merely lists some findings by Drs. Rao and Tarakji.[2] While the undersigned has

---

[2]The undersigned notes, as the Commissioner did, that plaintiff fails to provide any basis for his assertion that the ALJ failed to properly evaluate the opinions of Dr. Mansour. Plaintiff only included a single reference to Dr. Mansour in the title of his legal argument but failed to identify any findings or opinions by Dr. Mansour or otherwise explain whether the record contains evidence from the doctor that is inconsistent with the ALJ's findings. The Court has no obligation to search the record to develop and support the arguments of the parties. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Rather, the Court's review is limited to specific issues the parties raise. *Id.* Thus, the undersigned finds that plaintiff's claim of error as to Dr. Mansour fails. Furthermore, the undersigned notes that Dr. Mansour's records cited by the ALJ support his RFC assessment. (Dkt. 5-2, Pg ID 46-47). Dr. Mansour treated plaintiff for multiple joint pain in his shoulder, elbow, hip and knee, noted that testing for Lyme disease was negative and that his symptoms could be related to side effect of marijuana, that despite complaints of pain, plaintiff had full range of motion and a normal physical examination, his carpal tunnel syndrome was described as mild, and he reported feeling much better with treatment. (*Id.*; Tr. 348-52, 553). Further, Dr. Mansour refused plaintiff's

19

thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, plaintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim. It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Indeed, a court need not make a party's case by scouring the various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). And, the court is not obligated to make plaintiff's case for them or to "wade through and search the entire record" for some specific facts that might support her motion. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

Nevertheless, the undersigned has reviewed the ALJ's decision and the record evidence and finds that the ALJ's decision is supported by substantial evidence. In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source

---

request for a disability letter and instead recommended that plaintiff seek treatment from Community Mental Health. (Dkt. 5-2, Pg ID 46; Tr. 385).

is entitled to more weight than a non-examining source, and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.   20 C.F.R. § 404.1527(d)(1)-(2).   A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, *5 (1996).   The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."   *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).   The opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).   An ALJ need not credit a treating physician opinion that is conclusory and unsupported.   *See Anderson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (holding that an ALJ need not credit a treating physician's conclusory

opinions that are inconsistent with other evidence) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)).

A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, at *16 (W.D. Tenn. Mar. 26, 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson*, 378 F.3d at 545 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

Upon careful review, the undersigned finds that the ALJ properly weighed the opinion evidence of Drs. Rao and Tarakji. The ALJ thoroughly reviewed the record evidence, acknowledged that plaintiff has severe impairments, but found that the medical evidence does not support the severity of plaintiff's allegation that he is disabled from working. (Dkt. 5-2, Pg ID 45-47). The ALJ noted that plaintiff was treated conservatively with medication and some injections, and that Dr.

Mansour, plaintiff's primary care physician, did not find any functional limitations and would not complete a disability evaluation for him and recommended that plaintiff seek treatment from Community Mental Health.  (Dkt. 5-2, Pg ID 47; Dkt. 5-7, Pg ID 408).

Neither Dr. Rao nor Dr. Tarakji rendered an opinion as to plaintiff's functional limitations.[3]  Rather, the record contains only treatment notes from the doctors detailing their observations and treatment of plaintiff.  Specifically, Dr. Tarakji evaluated plaintiff for "numbness and tingling involving upper and lower extremities" and conducted an EMG study of plaintiff's upper and lower extremities, which "showed evidence of diffuse neuropathy with superimposed bilateral carpal tunnel syndrome and right ulnar mononeuropathy at the elbow." Based on his examination and testing, Dr. Tarakji assessed plaintiff with diffuse

---

[3]Although the Commissioner refers, in his brief, to a statement by Dr. Tarakji in May 2011 that plaintiff has "significant degenerative spine disease in addition to the carpal tunnel syndrome, which caused significant problems causing disability doing his construction work," those records, as well as other records submitted to the Appeals Council, are not part of the record for judicial review because they were submitted to the Appeals Council and were not before the ALJ when he rendered his decision.  As explained in fn 1, *supra*, in this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton*, 2 F.3d at 696; *Cline*, 96 F.3d at 148.  Although the court can remand the case for further administrative proceedings under sentence six of 42 U.S.C. § 405g if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding, plaintiff has not even attempted to make such a showing here or otherwise sought a sentence six remand.  In any event, as the Commissioner argues, Dr. Tarakji's opinion would not conflict with the ALJ's decision, as he also found that plaintiff could not perform his past work.

neuropathy, sensory, mild; bilateral carpal tunnel syndrome; right cubital tunnel syndrome; degenerative cervical and lumbar spine disease; and history of Lyme disease, rule out neuro manifestation.  (Tr. 392-95).  As to Dr. Rao, a radiology report from the doctor dated March 20, 2011, revealed that Dr. Rao performed cervical block injections on plaintiff.  The report noted a diagnosis of lumbar spondylosis/facet arthropathy, and complaints by plaintiff of persistent severe back and leg pain, with tenderness over plaintiff's lumbar facets, and a reported pain score of 10 out of 10.  (Tr. 527).

The law and the Social Security regulations recognize a difference between a treating physician's treatment notes or comments, and a treating physician's "medical opinion."  *See* 20 C.F.R. § 404.1527(a)(2); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)"); *Bowen*, 478 F.3d at 749 (noting that a treating doctor's general findings are relevant, but not controlling without a residual functional capacity ("RFC") assessment).  According to the relevant regulation, medical opinions are defined as statements "that reflect *judgments* about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do

24

despite impairment(s), and [the claimant's] physical or mental restrictions." 20

C.F.R. § 404.1527(a)(2) (emphasis added).  Only opinions of treating physicians

are entitled to controlling weight.  On the other hand, mere *observations* about a

claimant's condition do not qualify as "medical opinions."  *Bass*, 499 F.3d at 510

("Observations about plaintiff's gait and ambulation, then, are more like statements

made by plaintiff and about his conditions, statements that the ALJ here found not

entirely credible when compared to the objective medical evidence.").

Drs. Rao's and Tarakji's treatment notes and reports detail their observations

and treatment of plaintiff and do not contain opinions relevant to plaintiff's

functional limitations, and therefore are not evidence of limitations that were

ignored by the ALJ.[4]  For instance, Dr. Rao's treatment note lists a diagnosis of

"Lumbar Spondylosis/facet arthropathy," repeat plaintiff's complaints of

"[p]ersistent severe back and leg pain," "tenderness over lumbar facets present,"

and "[p]ain score is 10 out of 10," and noted a procedure performed.  (Tr. 527).

*See Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009)

("[T]he regulations and our case law also make clear that before the ALJ must

apply the good reasons rule, there must be a genuine assertion by the treating

---

[4]The ALJ did recognize that Dr. Barbara McIntosh, plaintiff's treating rheumatologist,
completed a medical source statement on May 16, 2011, in which she opined that plaintiff could
lift and carry ten pounds, stand/walk for less than two hours, and would have to alternate his
sitting position.  (Dkt. 5-2, Pg ID 47, citing Tr. 438).  The ALJ gave this opinion very limited
weight, finding it not supported by Dr. McIntosh's office records or the totality of the medical
evidence.  (*Id.*).  Plaintiff does not challenge the ALJ's assessment of Dr. McIntosh's opinion.

2:12-cv-11781-BAF-MJH   Doc # 13   Filed 08/16/13   Pg 26 of 33   Pg ID 706

physician of an opinion involving the claimant's "symptoms, diagnosis, and prognosis.  A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.") (internal citation omitted); *see also King v. Comm'r of Soc. Sec.*, 2013 WL 3456957, at *7 (E.D. Mich. July 9, 2013) ("The Sixth Circuit has held that the treating source rule does not apply unless there is a genuine assertion by the treating physician of an opinion involving the claimant's "symptoms, diagnosis, and prognosis.") (internal quotation marks and citations omitted); SSR 96-2p, 1996 WL 374188, at *2.  And, Dr. Tarakji's treatment notes do report that he assessed plaintiff with diffuse neuropathy, sensory, mild; bilateral carpal tunnel syndrome; right cubital tunnel syndrome; degenerative cervical and lumbar spine disease; and a history of Lyme disease, rule out neuro manifestation, and thus contain a diagnosis, the notes do not otherwise contain any assessment of the functional limitations imposed by those impairments, or a judgment as to whether plaintiff's impairments met or were functionally equivalent to a Listing. The ALJ credited the doctors' findings in reaching his RFC determination.  Importantly, plaintiff does not point to any opinion by either physician that was rejected by the ALJ, or otherwise explain how the ALJ's decision is inconsistent with that evidence.

In sum, the ALJ's decision indicates that he thoroughly reviewed the

26

evidence of record and properly weighed the opinion evidence.  While the record

contains treatment notes from Dr. Tarakji and Dr. Rao, there are no corresponding

opinions from these doctors as to plaintiff's functional limitations or what he is

able to do despite his impairments.  There is no doubt that the doctors' treatment

notes lend credence to the fact that plaintiff suffers from multiple joint pain.  In

fact, the ALJ specifically found plaintiff's Lyme disease, bilateral carpal tunnel

syndrome, degenerative disc disease with L5 nerve root irritation, COPD, and

multiple areas of joint pain to be "severe" impairments.  (Dkt. 5-2, Pg ID 43).

However, a diagnosis of an impairment, in and of itself, is not conclusive evidence

of disability because it does not reflect the limitations, if any, that it may impose

upon an individual.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,

151 (6th Cir. 1990).  The ALJ thoroughly discussed the medical evidence, accepted

the diagnoses made by the physicians, and found them to be "severe impairments"

in his disability analysis.  The ALJ limited plaintiff to a reduced range of light

work, stating that he can never climb using ladders, ropes or scaffolds, can only

occasionally crouch or crawl, and cannot work in environments with fumes, odors,

or gases.  (Dkt. 5-2, Pg ID 44-47).  Plaintiff has not cited to any portion of the

record containing opinion evidence from these doctors that is contrary to the ALJ's

decision.  Without any such contrary opinion evidence from these doctors, the

undersigned cannot conclude that the ALJ erred in evaluating the record regarding

these physicians.  *See Hazelwood v. Comm'r of Soc. Sec.*, 2012 WL 5930439, at *4
(S.D. Ohio Nov. 27, 2012) (because the record contained treatment records but no
opinion evidence from plaintiff's treating physicians as to plaintiff's functional
limitations or what he is able to do despite his impairments, the ALJ did not err by
not applying the factors enumerated in §§ 404.1527(c) and 416.927(c)), *adopted by*
2013 WL 170116 (S.D. Ohio Jan. 16, 2013); *Kurish v. Comm'r of Soc. Sec.*, 2012
WL 6193890, at *9 (E.D. Mich. Nov. 6, 2012) (a mere recitation of plaintiff's
symptoms by a physician does not constitute a "medical opinion" because the
statements do not reflect any judgment about the nature of plaintiff's impairments
or articulate any limitations on his ability to function), *adopted by* 2012 WL
6192673 (E.D. Mich. Dec. 12, 2012).  Accordingly, plaintiff's claim of error
should be denied.

### 2. The hypothetical question was supported by substantial evidence

Plaintiff asserts, again without any developed argument, that each element of
the hypothetical question posed by the ALJ to the VE does not adequately describe
plaintiff in all significant, relevant respects, and thus the VE's testimony at the
hearing in response to that question does not constitute substantial evidence
supporting the ALJ's decision.  Plaintiff only asserts that "[t]he medical evidence
shows a herniated cervical disc with radiating pain; bilateral carpal tunnel
syndrome with pain and numbness; and L5 nerve root involvement."  (Dkt. 8, Pg

28

ID 650).  However, the relevant consideration in disability cases is not the plaintiff's diagnosis, but the functional limitations resulting from plaintiff's impairments.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosable impairment not necessarily disabling)).  It is well established that assessment of residual functional capacity for work must be made only after all of a claimant's limitations have been taken into account, and a hypothetical question posed to a vocational expert must include a "complete assessment of [the claimant's] physical and mental state and should include an accurate portrayal of [his] individual physical and mental impairments."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (internal quotes and alterations omitted).

A review of the record reveals that the ALJ's hypothetical question mirrored the RFC and properly contained all of plaintiff's functional limitations as established by the objective medical evidence.  Notably, plaintiff points to no functional limitations arising from the diagnoses mentioned above, and indeed does not articulate any additional functional limitations that should have been included in the hypothetical question or otherwise articulate *how* the hypothetical fails to accurately describe plaintiff.  In fashioning the hypothetical question to be posed to the vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact."  *Casey v. Sec'y of Health &*

*Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1995).  The Sixth Circuit has

repeatedly confirmed that the hypothetical question need only include the

plaintiff's actual functional limitations, and not a laundry list of his diagnoses or

allegations. *Varley*, 820 F.2d at 780.  The ALJ here reasonably determined that

plaintiff could perform a limited range of light work with some postural and

environmental limitations.  (Dkt. 5-2, Pg ID 44-47).  As the Commissioner

correctly argues, the ALJ noted that plaintiff had some mild impairments, and that

he was treated conservatively with medication and some injections.  (*Id.*).  Further,

despite his serious medical conditions, the ALJ noted that plaintiff smokes and has

a history of alcohol and substance abuse.  (*Id.*).  The ALJ further noted that

plaintiff left work after his company was downsized and his dad was sick and

required care.  Plaintiff is currently in college working on his associate's degree

despite his impairments, and can make meals, do household chores (i.e., cleaning

and laundry), pay his bills, count change and handle his bank accounts.  (*Id.*).

Further, a May 2010 examination by Dr. Mansour revealed that plaintiff has a full

range of motion and a normal physical examination (Tr. 325), and a January 2011

exam by Dr. Tarakji showed the plaintiff has mostly normal tone, bulk and muscle

strength of both upper and lower extremities, no atrophy, and a normal gait.  (Tr.

392).  Further, plaintiff reported that he was able to walk and use public

transportation, cook meals daily, shop monthly for groceries, visit with friends, and

that he exercises in the form of walking 12 to 14 miles per week.  (Tr. 275-76, 410).

"Discretion is vested in the ALJ to weigh all the evidence," *Collins*, 357 Fed. Appx. at 668, and there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  The undersigned concludes that the ALJ considered the record as a whole and explained his rationale based upon objective evidence in the record.  The ALJ's decision is supported by substantial evidence, and plaintiff's claim of error should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

31

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2013                       s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>August 16, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Richard J. Doud, Judith E. Levy, AUSA, and Adam Sorkin and Marc Boxerman, Social Security Administration</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov
